Good morning, your honors. May it please the court. Josh Turner on behalf of General Labrador. I'd like to reserve four minutes for rebuttal. Very well. After Washington State and Oregon removed informed consent protections for minors, legally authorized abortions without parental consent, and marketed their unfettered abortion access to out-of-staters, Idaho passed the abortion trafficking statute to protect parents and minors. The law is narrow and one wouldn't think unobjectionable. It prohibits strange adults from recruiting, harboring, or transporting unemancipated minors within Idaho to procure an abortion, but only when that act is done with the specific intent to conceal it from the unemancipated minors' parents or guardians. The act plainly prohibits conduct, not protected First Amendment activity. After all, no one has a First Amendment right to recruit, harbor, or transport unemancipated minors for any purpose against their parents' wishes. That is true whether we are talking about trafficking minors to obtain abortion, conversion therapy, or a religious experience, and it is especially true for serious medical procedures like abortions. Plaintiffs mistakenly assume that a course of conduct becomes immunized from state law just because it is combined with elements of speech or expressive conduct, but the Supreme Court has consistently said the opposite for over a hundred years. That's why in Schenck, the court held that leafletting was unprotected when combined with unlawful conduct. In Gibney and Cox, the court held that peaceful picketing was unprotected because of its unlawful purpose. Let me jump in just with a few questions. The first one is that the word trafficking is used, and I was a prosecutor for a long time, and so I was familiar with narcotics trafficking, arms trafficking, human trafficking. In this context, let's make sure when we use the word trafficking, the statute is not talking about selling kids to have abortions, correct? No, not selling, but it is using trafficking in the same sense that other human trafficking statutes use trafficking, which is the movement of persons. That's why the recruit, the harbor, the transportation verbs are being used, which is consistent across all trafficking statutes. I just want to make sure, though, because normally trafficking involves something for profit. Not necessarily. It does, but not always, and so trafficking a minor under the federal criminal prohibitions for underage sex does not necessarily involve a profit element. Well, I agree. It doesn't always, but I think almost always it does. I know it doesn't really... Well, to your point, Your Honor, this is what the Supreme Court addressed in the Williams case with the child pornography, and the argument there was, well, under a commercial speech aspect, maybe there is a prohibition that is justified, but the mere possession of child pornography without any profit motive falls under the First Amendment. The court rejected that, and so I don't think that the profit element or the lack of it... No, I agree. I just want to make sure because the word trafficking is used a lot, and from my world, that meant a certain thing, and I understand your argument that trafficking in this is something a little bit different, but here's my main question I want to ask you, is that the word recruit is used, and again, I'm familiar from the alien smuggling cases and the sex trafficking cases I worked on, what that means. In this context, I know what they're going to say, so I want to give you a chance to address it. They're going to say, look, if I am a lawyer and I give a speech or I write a book about how someone who's underage could potentially get to Washington or get to a different state, I could be prosecuted under the statute. Can you talk to us about whether that is, am I right, and that's okay, or if I'm wrong, why am I wrong? What does recruit mean as far as your concern? So that's absolutely wrong because of the specific intent element and because of the common-sense canon, Nociturus Associus, which is a term is known by its neighbors. So recruit has to be understood in the specific intent element, number two, in association with its neighboring verbs of harbor and transport. And for recruit... Let me stop you there. Each of those is an independent ground for prosecution, correct? Absolutely right, Your Honor. So you can bring somebody into your house, you're harboring them. Put them in your car, you drive them to Washington, Montana, Oregon. You're transporting them. So I'm having some trouble understanding recruitment as being cousin to those very specific type of conduct that we understand quite well. Recruit is a different matter. Yeah, I don't think so because for a couple of reasons. First, I mean, the canon, Nociturus Associus, means by definition that it is going to be understood in context to its neighboring verbs. Not necessarily that those neighboring verbs are part and parcel of the trafficking statute. The term recruit is commonly understood as the first act in the trafficking conduct. You need to recruit somebody, enlist them before you can harbor them, before you can transport them. That's why it comes first. And that's why every single statute that prohibits any type of trafficking uses the term recruit. And so if plaintiffs are right here, that casts a First Amendment pall over every human trafficking statute. And they don't have an answer to that. I encourage you to ask them, what does this do for every federal and state human trafficking statute that uses the term recruit and does not define it? Because I think they put a lot of weight on it's not defined, therefore it's vague, therefore it's over broad. But that doesn't address that none of these statutes define recruit. And all of them use that verb in that sequence. Let me put it in more practical terms. I have a couple of things in mind. If the organization erects a huge billboard at the border between Washington and Oregon and it says something to the effect of, scared and pregnant? Call us. Absolute confidentiality. We would tell no one, including your parents. Is that recruiting? No, I don't think so for a couple of reasons. First, you have to have a specific intent element, not a general intent to conceal. It has to be specific to the minor's parents. So a minor has to come to you and you have to specifically intend to conceal it from that minor's parents. Okay, so now I'm going to take you there. Now we're either in a Planned Parenthood or a clinic or at school and the minor comes in and she says, I'm pregnant. I want to get an abortion. I know I'll be kicked out of the house. I am afraid to tell my parents. The individual then says, not about the health plan, but you can get an abortion legally in these locations. We will not tell your parents anything. Specifically, I'm assuring you that your parents will not learn about this conversation. So here's what you need to do if you want to get. Now the person is not going to do the transporting, not going to give them shelter on the way to Washington, but it's just saying. Will it connect them with the group that would do that? That's we'll go in stages. Yeah. Okay. I really do appreciate the question. So at this point, we're in the office, school, health clinic or whatever, and we're basically saying this is what you need to do. These are the states where it's legal to join your state of Idaho. And these are organizations that make it specifically not your parents, because I know you're scared to death about that. Is that recruiting? That may be recruiting if there's a connection to the organizations, but there's another part of the statute that we haven't talked about, which requires that the person being charged have procured the abortion. That's why I want to understand, because I did go through your briefs to try to understand what recruitment meant. And I have to say there's about 20 different definitions offered by the state of Idaho by Council. Well, it could be missed. I mean, that's I'm trying to get an understanding at this point. Everything we've talked about. Would that be recruitment? Because there would be an intent to conceal from the parents. There would be recruitment potentially. And then do you need to procure the abortion? What about these inchoate crimes of accomplice liability or whatever? And so like aiding and abetting the recruitment harbor. Yeah. And I think what your questions are getting to is the underlying policy decision that Idaho has made here, which is, is it unlawful conduct to recruit, harbor, and transport minors for any purpose without their parents' consent? And here, the focus is on abortion, to be sure, but other statutes are focused on other things. I'm only worried about abortion, because that's the only statute that's in front of us. But the decision... Would you go back and answer my question so we can go to your next phase? And that is, is the scenario I described recruitment? As I understand it, if there is a connection between a specific minor who is unemancipated, that means under their parents' custody, and an organization that is going to harbor and transport that child to receive an abortion, then yes, that could be recruitment if it's combined with a specific intent element, but that's conduct we're talking about, not speech. Wait, so you need... You're saying it has to be connected to harboring or transporting? Yes, that's the traffic... Those three verbs are connected, because... But why does it say or? Because any one of them on its own, like if you don't participate in driving the minor, but you recruited the minor to be driven, to be harbored, to ultimately receive the abortion. I mean, that's how trafficking works. Just because you're in one link in the chain doesn't mean that you're necessarily immunized. I'm very familiar with human trafficking in particular. And I think that's a really good analog, Your Honor, to consider. And just because we're talking about... But you still haven't answered why it needs to be linked. They often are linked, but it could be nothing comes of it. The child goes home, has second thoughts, goes to another clinic where they say, don't have an abortion, it's okay, I'm not gonna do that. Well, then an abortion hasn't been procured and there's no violation of the statute. That's right. So that could happen, but I'm still... I still have the child in the office here, and the person giving the advice has done nothing more than give that advice that I've just talked about. So we don't have yet any harboring or transporting, and we have only recruitment, potential recruitment. I'm trying to get... I'm really trying to understand from your point of view. And I think it's a mistake and it's wrong, and it's what plaintiffs urge the court to do, is read recruit outside of the context of the statute, and that can't be done. It's a criminal statute that's prohibiting a course of conduct, and recruitment is one part of that course of conduct. It may alone be sufficient if that is your only part in the course. Okay, so when would it be in itself alone sufficient? I'm saying if you only were on the recruitment side of it, your job in the trafficking, whether we're talking about abortion trafficking or human trafficking, is to enlist humans to be harbored and transported, then yeah, you're not immune from the statute just because you didn't do the harboring or the transporting. Likewise for harboring, if you didn't do the recruitment and you didn't do the transporting, but you're holding the child... Right. See, I guess I'm having trouble with this argument because you're linking... You're saying, instead of or, you're saying and. That's where I'm having trouble with your linking always. And I understand what a human trafficking ring looks like. I understand in general what human trafficking could be. I don't think that trafficking is kind of the right word. It's only in part two. If I'm really looking at part one of the statute to try to figure out... If I'm a prosecutor and I'm a human trafficker, I can charge them with recruiting under subsection one, correct? I think this is the Hansen case. It came out of the Ninth Circuit and was reversed by the Supreme Court that made the same mistake. It looked at, encouraged, and induced a contextually. And the major correction by the Supreme Court was to say, no, you can't do that. You have to look at it in context of its surrounding verbs, its surrounding context, and the fact that it is a criminal statute with a specific intent element. It's the same here. Now, let me step back, because there's a big assumption going on here, and that is that this is speech or expressive conduct, and not conduct that is validly prohibited. Well, no, but you still haven't really answered my question, because I totally understand if I tell them to go get an abortion, illegal abortion in Idaho, that is integrally linked with illegal conduct. I think it might be different if I'm talking about an abortion in a state where it's legal. So I'm just trying to unpack your big argument, and I'm trying to understand whether the scenario I gave you would admit someone to prosecution in Idaho. I think I answered your question, Your Honor. I'll be clear. The answer is yes, if it is connected to the trafficking. But let me address something that you said that I think is... And the trafficking, you say, would be either transporter or harboring. To procure an abortion with the specific intent of concealing it from the parents, the minor's parents, yes. The other thing I saw in the briefs that were slightly varied answers is, do you need to actually have the abortion, or do you only need to make arrangements for an abortion? The abortion has to be procured, or the abortion... What does that mean? I'm putting the pill part aside. Yeah. What does that mean to procure an abortion? It means that the abortion is done, the child is terminated. Okay. So if I could jump in on that, and don't worry so much about the time, we're gonna give you... And for both sides, we're gonna give you time to argue this one. Again, put my law enforcement hat on. Let's say we wanna run a sting operation, because we think there's a group of people that are trying to recruit young women, young girls, girls to have abortions. And so we send in undercover officers dressed as high school girls. There was never going to be an abortion, but it was a sting operation. Could a sting operation be a violation of the statute? So I think you're getting to whether an attempt of violating the statute would violate the statute. Or a conspiracy violation. Or a conspiracy solicitation. And yeah, I think this demonstrates, though, why this isn't in First Amendment territory, because now we're just talking about conduct. And conduct can sometimes consist entirely of words, but it's still conduct. And so your question highlights a very important point, Your Honor, that they assume, plaintiffs assume that everything that they want to say is protected First Amendment activity. But there's really a long standing exception for speech that is integrally connected to conduct. And to Judge McKeon's point about the fact that an element of the criminal statutes have elements that on their own would not be illegal. So the fact that the abortion being procured in a place where it is legal has no bearing on the First Amendment analysis. But back to my question then, because I'm just trying to understand what recruit means in this situation. If it's an inchoate crime, one that could... It was actually factually impossible to occur, would that be a violation of the statute? Well, I mean, because it's a criminal statute, there has to be a mens rea at the... And I really thought... I was someone, I was really hoping that this young woman, who I thought was 17, but she's actually 23. And I really wanted her to get in this car and drive to Oregon, even though she's 23, so she wouldn't fall under the statute. Yeah, and I think what you're describing is an attempt at violating 18.623. And that attempt often falls short of the consternation of the act. So would it in this case? I mean, you're often... Again, I'm trying to understand what recruit means, and it helps me understand it if I know if it implies to sting operations and real operations. So to answer my question, the answer is, it would not be a violation of the statute, or it would be. Well, are you saying that if somebody is engaged in enlisting minor girls... Yeah. Who turn out not to be minors. Right. And they know, or there's proof that they are intending to procure an abortion, but for whatever reason, that turns out to be factually impossible. Correct. Is it a violation? Yes, it would still be a violation, because you've got all of the traditional criminal law elements of intent, you just don't have consternation of the act. And that is not a defense under the statute. And so long as this clinic or school nurse counseling is done, but no abortion ever takes place, no criminal liability, yes or no? So if it's not an attempt, then no, if it's an attempt, and now we're arguing what makes it an attempt, right? And I'm not trying to be cagey, but this is a question, like what makes it an attempt? These are really legitimate, these inchoate parts of the statute and the application. And this isn't unique to... I mean, this is... Particularly comes up with child pornography or soliciting a minor, this always happens. And I think this gets to something that I really wanna talk about, and I know you've encouraged me not to be too worried about time, but the jurisdictional aspects here that make this case a very poor vehicle to address the First Amendment questions in the pre enforcement context, because of what plaintiffs say their conduct, the chilling that's going on with their conduct. I think if you look at all of the briefing and the declarations of the conduct that they want to engage in, I can comfortably stand up here and say none of that is prescribed by the statute, unless it is combined with the element of intending to conceal it from the parents. And I think their complaint and their declarations come short of that. Some, the organizations... We'll get to standing, but I don't wanna completely leave the statute, because I think that's the harder question here. I don't know that my colleague necessarily agrees, but... So if there is a first... If there is a speech component of this that can be unlinked from conduct, and the speech component is, here's how you can have an abortion, here's how you can terminate pregnancy, but of course, it's nothing in this statute or else where it says that you can't go to some other counseling center where they say, don't have an abortion. Wouldn't that really... Doesn't amount to viewpoint discrimination? Because yeah, it's okay to tell somebody not to have an abortion, but it's apparently not okay to tell them they should have an abortion. Yeah, so on the content and viewpoint discrimination point, that really becomes relevant only if you get outside of the accepted First Amendment categories. So you have to first address that threshold question, and of course, our argument is that this is conduct, it's not speech. And just because speech combines with elements of conduct doesn't turn it into First Amendment protected activity. So the content neutrality and the viewpoint discrimination points, I don't think you can get there because this is a traditionally accepted category that the Supreme Court has recognized for over 100 years. That's why the leafletting in Schenck, that's why the picketing in Gibney and Cox were unlawful. On their own, devoid of context, sure, that's First Amendment protected activity. But when it was combined with an unlawful element, a purpose to, in the Gibney case, to compel or coerce a employer to do something that was illegal and restraint of trade, then it becomes conduct, even though it contains elements of trade. It's the exact same scenario here. I'm well over my... Before you go to your last point, let me just ask you, if there were speech elements here that are not linked with conduct, and then we would get into the other First Amendment analysis. In your view, could the statute be severed if you were to drop the word recruit? So I think that there are obligations on this court to avoid constitutional issues and to save a statute from an unconstitutional reading. And if severing the word recruit is one way to do that, I think it's within this court's power, not just power, but duty, to preserve the statute. Because I think we're in agreement, or it sounds like we're in agreement, I won't presume necessarily, that harboring and transporting are clear conduct elements and the recruitment is where the main rub is here. I think we're in agreement that that's a hard question. Yeah. Yeah, and I guess I'll just... I just want to follow up with this and then, again, we'll give you time for rebuttal, don't worry. But when I see the word recruiting, I just want to make sure. So you're saying recruiting in this context does not mean educating or informing? That's the Thompson case, right? The Thompson case, I encourage you to ask how Thompson is distinguished out of the Second Circuit. It is a recruit, harbor, transport statute. And the court addressed the same over breadth type challenge and said, no. And it was dealing with claims that religious organizations and charitable organizations that wanted to come alongside and help victims of sex trafficking would have their speech chilled. And the court said, even if that is the claim, even if that activity would be chilled, there isn't a First Amendment right to engage in that activity when it falls under the recruit, harbor, transport elements. Now, I think, as I've said, what they've described they want to do, raise money, educate minors where you can receive an abortion, associate with others to do all of that. None of that is prescribed by the statute. If I can say one thing on the 11th Amendment, because I want to give my opposing counsel a fair opportunity. Not too much on that one, but go ahead. Yeah. I think the important thing on the 11th Amendment is that this looks exactly like what ex parte young meant to preclude. In order for the ex parte young fiction to apply, you've got to have a state official with the real power to prosecute under the statute. I won't get into the sole discretion too much, but I'll just say it's clear to me when you read this that the sole discretion is referring to the Attorney General's ability to prosecute once the triggering event has happened where there is no prosecutor or basically prosecutorial nullification by the county prosecutors. And here the complaint contains zero allegations that that is in fact the case. So under this court's clear... I'll just give you two quotes. In Jamwool, this court said, for ex parte young to apply, a plaintiff must point to a threatened or ongoing unlawful conduct by a particular government officer. They can't do that here. In Longview-Vandekamp, the court... I don't think I've ever heard the state disclaim that it was going to enforce this statute, or the Attorney General has never said, I'm not going to step in. Is that true? What we said is we have no ability to step in and enforce a statute against these plaintiffs. Zero ability right now. Right, but you've never disclaimed that if a county prosecutor declined to prosecute that the AG wouldn't step in. And I think if there are allegations, if they could, under Rule 11, allege that there was prosecutorial nullification that would trigger the power of the Attorney General, then yes. But here's the connection I'll make, and then I'll sit down, on redressability. I think there's a redressability problem. They say there's no redressability problem. Assuming arguendo that there isn't, it demonstrates the ex-parte problem. Because if there isn't a redressability problem, in other words, they now are receiving real relief because the Attorney General is enjoined from enforcing the statute. To me, it demonstrates that what they have done is enjoined the state and not the Attorney General. All right, so now I'm going to ask you a question, and then you can sit down. There's a case, Planned Parenthood, Great Northwest Hawaii, Alaska versus Labrador. That has 11th Amendment issues in it as well. Do we need to hold... Under your view of the 11th Amendment, don't we need to wait for that case to come down before we resolve this one? No, that case has 44 county prosecutors joined as defendants. Here, there is no county prosecutor joined. Very distinguishable. Separate question. Got it. All right, we'll give you time for rebuttal. Thank you. I have to confess, Your Honor, I wasn't watching when I said move the podium, but I assume it's okay if I just move the microphones. Looks great. Sounds great. Thank you, Your Honors. Wendy Olson, Store Reeves LLP, along with Wendy Hyped from Legal Voice and Paige Suesley from the Lawyer in Project, on behalf of plaintiffs, Lourdes Matsumoto, the Northwest Abortion Access Fund, and the Indigenous Idaho Alliance. Your Honors, plaintiffs in this case are an Idaho woman and two organizations that assist pregnant people, including pregnant minors, obtain abortion, and including in Idaho. They advise pregnant minors, they help them identify legal options for abortion care, and they provide financial and travel assistance. They know that Idaho has criminalized abortions. Plaintiffs do not seek to help pregnant people obtain unlawful abortions in Idaho. They seek to help pregnant people, including Idaho minors, obtain abortion care in states where it is lawful, including Idaho's neighbors to the west, Oregon and Washington. It is plaintiff's position that Idaho Code 18.623 unconstitutionally inhibits plaintiffs from providing this assistance. It seeks to criminalize an unclear amount of undefined assistance to minors, including information and travel assistance within Idaho. As the District Court properly found, Idaho Code 18.623 is a content-based regulation of protected speech and expression. It regulates protected speech and expression because it favors abortion. It prohibits plaintiffs from saying things that the state disagrees with. That, Your Honor, is the, I would submit, the signal that this is a content-based restriction that this Court should analyze and subject to strict scrutiny. Significantly, Your Honor, for purposes of standing, after 18.623 became effective, plaintiffs stopped exercising in Idaho what they believe are their constitutionally protected First Amendment rights because they are unsure of what communications, associations, and expressive conduct they can engage in. The statute states, and I would submit, Your Honors, that it's written a little unusually and not like the typical human trafficking or sex trafficking statute. And it says, an adult who with the intent to conceal an abortion from the parents or guardian of a pregnant, unemancipated minor, either procures an abortion, as described in a different section of Idaho Code, or obtains an abortion-inducing drug for the pregnant minor to use for an abortion, and there's no comma after that abortion, and it says, by recruiting, harboring, or transporting the pregnant minor within this state commits the crime of abortion trafficking. And quite frankly, Your Honors, I'm not certain what procuring an abortion or obtaining an abortion by recruiting, harboring, or transporting, or harboring means. It's unclear whether... Let's start with maybe what could be the easier construction, and that's transporting. So taking a minor, hiding from the parents that the organization is doing it, and transporting within the state of Idaho so that the person can get a legal abortion in an adjoining state. That's not clear? I mean, where is the speech in that? Your Honor, we would submit that the transporting part, that the right of association is implicated by that transporting part. And with respect to these particular plaintiffs, their activities that they have engaged in historically, and that are referenced in great detail in the declarations that were submitted or in the record, they make clear that they have done work historically to assist minors, to provide financial assistance, and travel assistance. And they do so to send a clear message, expressive conduct and association, that they support abortion care, they support minors who want to seek abortion care, and they engage in these activities with others who are engaged in that very same assistance type activity. And so we would submit that in that respect, transporting, the transporting provision infringes on that First Amendment right to association, harboring and transporting... But if we were to disagree with you on the right of association aspect of your argument, how would transporting implicate the First Amendment? Well, Your Honor, I would submit that if you disagree on the association part of it, there may be an expressive conduct aspect of transporting. It is an act that expresses support for lawful abortion and lawful abortion in another state. And that's a message that is clearly understood by those in the community, by those who would seek their services. It's understood certainly by the state of Idaho that that's what their expressive conduct is about. So if it's not association, Your Honor, we would also admit that it shows expressive conduct. The focus that we had with your colleague really related to the word recruit in a lot of the briefing and argument related to that. What is it that you think is covered by the First Amendment that would be, specifically, that would be encompassed within recruit given what you heard Attorney General argue today? Well, Your Honor, I would submit that both the example that you gave with respect to the billboard and to the conversation that occurs... So if we move from the billboard to a more confidential setting... I think, Your Honor, that for speech to be protected, you don't have to have a large audience. It doesn't need to be on a billboard. It doesn't need to be in a courtroom of this size, but it is speech about a topic of public importance. And so I would submit that that is First Amendment-covered speech, even when you're in that small setting with the individual. Well, I don't think they disagree with that. They would just say that that speech is integral because of the nature of your organization to the harboring and the transporting. And therefore, you don't have a situation where the speech can be unlinked or delinked from the conduct. And therefore, that sinks the First Amendment claim. And I'd appreciate your response to that. Yes, Your Honor. Sorry, I think I misunderstood your question initially. But, Your Honor, what we would submit is their argument for speech as integral to criminal conduct misses a very important point of the Supreme Court's analysis in United States v. Hansen. And so Hansen focused on the terms encouragement and likened it to solicitation. But its focus was on... the speech was about something that was ultimately an unlawful act. And in order for it not to be covered by the First Amendment, the Hansen Court said, the exception requires intentional encouragement of an unlawful act where the government seeks to exact criminal punishment for speech or communication. So it's speech about something that is unlawful. And the Hansen Court also says speech intended to bring about a particular unlawful act has no social value. Therefore, it is unprotected. And that's precisely the problem with the statute here, Your Honor, is they're not speaking about an unlawful act. They're speaking about a lawful act, abortion that is lawful in the place where it occurs. By my colleague from the state's argument... Do you think it would be possible to have the speech be protected in this confidential setting and we aren't going to tell the parents? And therefore, the counselor, the nurse, whomever, couldn't be prosecuted for violation of the statute. But that somebody who transports the child could be prosecuted. Do you think they can be delinked? If there was... If the speech had occurred in the clinic, and then the person in the clinic tells the person, I can connect you with or connects them somewhere with someone who can transport them for the unlawful act. Yes, Your Honor, I think they can be delinked. I think, as Judge Owens indicated, these are separate ways that you can commit the crime or separate ways the statutes can be used. It's just like any criminal offense that you can commit through a different number of means. So I think it could be delinked. At least the spin I heard this morning was a little different than I perceived in the briefs, and that was that the recruitment is integrally related with these other two words always. What's your response to that? Your Honor, that's simply not how I would read a criminal statute. But if the state wants to make it harder to prosecute a case, that's absolutely fine with plaintiffs and probably criminal defense attorneys in Idaho. Typically, and if you... I think by his argument, Your Honor, that if they're not going to prosecute for the recruiting, and it all has to be connected, then there's not been that initial element that's occurred, and transporting isn't a violation either. But, Your Honor, I would also submit this is different from what the state has argued below. I understand. The read on their statute is very different today than it was in the district court in their briefing. Well, you know, we're all familiar with a lot of these state and federal human trafficking, sex trafficking, labor trafficking statutes, and they all use this language, recruit, harbor, and transport. And yet you say that here recruitment at least is vague. Wouldn't that implicate like literally scores and scores of statutes that are in the human trafficking area? No, they wouldn't, Your Honor, because I think the void for vagueness case law indicates that you look at the terms within the context to determine whether or not they're vague. Separate inquiry from directly whether it is speech protected by the First Amendment. And so here, Your Honor, where you have as an object of the activity this procuring an abortion that's lawful in a state where it is lawful, what does it mean to recruit somebody or to procure by recruiting somebody? What does it mean to procure by transporting somebody? And I think that's where it's difficult to understand what those particular terms mean. And in fact, it's different from what my colleague said this afternoon. It's different from what they said in front of the district court. And it's different from what the state legislature who was one of the sponsors said, where he said, basically, we don't know what that means. Recruit, harbor, transport, we'll see what the court says about it. And that's precisely then the vagueness problem, Your Honor. I don't know how a person is supposed to wait until they're in front of the court to know what precisely they would need to do to violate a statute. It still kind of begs the question, though, because in these other statutes, and leaving aside recruitment of adults, which usually have to be done by deceit, lack of consent, and various qualifiers, in the minor context, it's presumed that the minor cannot give consent. And therefore, recruiting a minor for a sexual activity or a labor activity is illegal. What's the difference between that and this statute, which is saying recruiting a minor for an abortion is illegal? Well, I think, Your Honor, the difference is the end object of the recruiting, harboring, and transporting, which is here, we're talking about abortion as a lawful in the states where people are being recruited, harbored, or transported to, Your Honor. Well, let me jump in with a hypothetical then. So let's assume that the state of Idaho has a consent law of 18 years old, but a bordering state has a consent law of 14 to engage in sexual relations. So Idaho passes a law saying, hey, look, we don't want our kids being recruited, or harbored, or transported to be sent to a state where they're 14 years old and they can marry. We don't think that's a good thing. We think it's better that kids wait until they're 18. So it's perfectly legal in the bordering state. You're saying in that situation that Idaho could not prevent that activity? Yes, Your Honor. No different? No different. And I would say, Your Honor, I'd point the court to, and I forget the exact federal criminal citation for this, but there is a statute that makes it unlawful to basically take someone across state lines to engage in sexual activity that's contrary to that state's laws. And that sounds like a very similar thing. So if you take somebody across state lines from Idaho into where I think the age is 16, into Nevada where there may be a different age, maybe it's 18 and 16, but if you take, I don't think you could prosecute that statute if they end up in a state where the person is above the age of consent. And I think it would be a similar thing here. Once they get to the state where it's lawful, I think that you wouldn't be able to have this particular criminal statute. So what, I'm trying to understand with some specificity, what the plaintiff's argument is as to what aspects of their speech are protected and are not linked with illegal conduct. So, Your Honor, I think their position is all aspects of their speech are protected as long as they're talking about where people have lawful abortion care options. I think if, for example, I guess to contrast that, Your Honor, or if they're, sorry, if they're transporting or harboring, because that, we've argued that's expressive conduct, or the First Amendment right of association. Transporting is expressive conduct, and harboring is expressive conduct. So try to stick to recruit. I'm having, you know, we're trying to explore the contours of the statute, so I don't know, but it just seems to me that there are distinctions between transporting, harboring, and recruitment. So stick to recruiting. Yeah, and I would agree, Your Honor. We definitely think that recruiting is the strongest case. It's the most clearly direct speech. But, Your Honor, I think to answer your question, and I apologize if I don't get this right, having to sort of go back in my mind, but I think if they're speaking to someone in Idaho and they're saying, look, you can actually go to Twin Falls and there's a doctor there who will perform an abortion for you even though you're underage and, you know, it is illegal in Idaho, then I think perhaps under one of those other statutes, you could have aiding and abetting a violation of 18604 along with the doctor being prosecuted for, that's actually the abortion, 622, for a violation of 18622. So I think that's the distinction, Your Honor. When they're having conversations with people to assist them find abortion care in a place where it's lawful, that's protected speech about a lawful activity, just as it would be protected speech about a lawful activity if you talk to someone about where they can go, for example, to get... Fireworks. Fireworks. If it's okay to get fireworks under the age of 18, I think some of those laws may differ as well. But when I asked the Attorney General whether this counseling would violate the statute, he went pretty far to say it would not, but seemed to say, but, of course, if you're also saying, and here's where you can get transported, or here's where you could go for sanctuary or refuge, that that might be. So are you arguing that any kind of counseling in connection with getting a legal abortion is protected speech? Yes, Your Honor. And we would also argue, I think the Court had a lengthy colloquy with my colleague about inchoate crimes and whether it would be an intent or aiding and abetting. And I think it's pretty clear that the, from the argument as I understood it from the Attorney General today from Mr. Turner, is that the person who engages in the conversation, if the minor later has an abortion, strike that, if engages in that conversation and maybe finds someone to harbor or transport, then we might end up in a situation where they are prosecuted for an attempt, which is, you know, a mere step in furtherance of the, or taking some act and showing that you have the same intent as having completed the crime. But previously I had understood the Attorney General, not specifically Mr. Turner, but the Attorney General's office to suggest you had to, the child had to have had the abortion or gotten the pill. But I'm hearing today that they're also saying that. So if you do lots of counseling but that the child doesn't go through with it, it would seem that wouldn't fall under the statute. Is that your understanding? Well, Your Honor, it might be what Mr. Turner articulated today, but I don't think it's what they've said below. And I think that's one of the confusing parts about the statute, Your Honor. And it still doesn't really address, as a matter of law, the attempt issue. If your attempt is to, if you have provided the counseling and you have informed the minor where they can get a lawful abortion and there is, in fact, that place where you can get an abortion and it's in, even if it's in another state, I would submit that under the law, that could be considered an attempt. And that's one of the concerns that plaintiffs have, Your Honor. I did not hear Mr. Turner say that the State of Idaho was disavowing its ability to prosecute inchoate crimes. What would the trial in this case look like since this is a preliminary injunction? The trial in this case for, if we get back to the district court on the merits of this particular case? Yes. Yes. I think, Your Honor, it would involve additional testimony from the plaintiffs regarding the activity that they have engaged in up to a point. There may be discovery from the Attorney General's Office regarding any plans they have in place to, or people that they've hired to prosecute this kind of a crime. There may be evidence regarding what law enforcement training has gone on to determine whether or not you can identify who's providing advice to minors. Certainly those kinds of things, Your Honor. And then as well, of course, we have in our complaint, but did not seek a preliminary injunction on that, the right to travel. And we would anticipate there may be some historical evidence related to that, Your Honor. Well, I think Mr. Turner also said there's a redressability problem that folds into the ex parte young problem. And that is that we don't have any state prosecutors that have refused or have decided to prosecute so as to kick in the Attorney General's authority. So what's the redressability here and traceability? Well, Your Honor, I think that the redressability here is, of course, we don't have to show that by getting an injunction or prevailing against the Attorney General that every problem is solved. Certainly the Attorney General would not be able to bring any prosecution. And I think the court pointed out he has not disavowed his authority to prosecute. There's a specific provision in this statute that says he gets to prosecute if somebody else refuses to do so. And he's the one, he's the only one, Your Honor, who can do this throughout any of Idaho's 44 counties. And one of the challenges in deciding if there needed to be a county prosecutor is we don't know what county that's going to arise in. We may know which county, for example, Ms. Matsumoto lives in. But getting relief from this particular injury by not having the Attorney General be able to enforce it is a substantial relief and addresses the injury that the plaintiffs assert in this case, Your Honor. And with respect to the Ex parte Young part of that, we think that this circuit's precedent on Ex parte Young is pretty strong that the Attorney General is the appropriate defendant, whether you look at Macinus or R.W. versus Columbia Basin College or Planned Parenthood versus Wasden, Your Honor. And I don't read Wasden, I know Judge McKeown, you were on that panel, but I don't read the Wasden case as saying that the Ex parte Young exception applied to former Attorney General Wasden because there was an Ada County deputy there. I think it was based on the language of the statute. And it wasn't just in some connection was that that statute that the Attorney General, if he got involved in a prosecution, could do everything that a prosecuting attorney could do. And I think, Your Honor, Macinus, the more recent case, makes it clear there needs to be some connection. And here, 18.623.4, which gives the Attorney General the authority at his sole discretion to bring a prosecution, if a county prosecutor does not, that is more than some connection with the enforcement of the law. One last question. If you were successful on some portion of the recruit argument, why wouldn't that be severed as opposed to invalidating the entire statute? Well, Your Honor, we would submit that the transporting and harboring, the vagueness problem certainly would remain for those. Okay, let me, let me, I probably wasn't quite precise enough. And that is, let's assume there's not a vagueness First Amendment or some other constitutional problem with transporting and harboring, but that there could be with respect to recruitment. Why shouldn't that be sliced off? Well, Your Honor, our position, of course, is there still remains a First Amendment problem and that the object of this, the abortion that's lawful in another state, still makes it problematic for those reasons. They can't associate, they can't, you know, raise money in support of an activity where it is lawful in the state where it, of course, this is... I've never heard that you can't raise money. I've never heard that challenged. Yeah, I apologize, Your Honor. I didn't speak precisely enough. There is, I think, with respect to association and expressive conduct, there is the fact that this is activity that you engage in and that your donors support through providing the money and that the cases are, one of the cases at least is in our briefing, Your Honor, that if you're restricted from doing those activities, which we think are expressive and associational, that has an impact then on the ability to raise the money to affect, to impact donors who won't want to provide money because their message of expressive conduct and association is not allowed to go forward because of that statute. Thank you. All right. Thank you, Your Honors. We'll give you four minutes. Thank you, Your Honors. I did not hear my colleague address the Thompson case or the DINGRA case. I think those cases are devastating. In DINGRA, this court said that the word persuade was not unconstitutionally vague under the First Amendment. If persuading somebody to engage in what the state has deemed unlawful is not unconstitutionally vague, it certainly cannot be the case that recruit is unconstitutionally vague. They've got no response to Thompson or DINGRA. I think what I heard from the other side is that this case ultimately comes down to the fact that receiving an abortion in a neighboring state is lawful. Therefore, any conduct that is made in pursuit of that lawful activity can be, provided it has First Amendment elements, is protected. That's not the law. To your hypothetical, Judge Owens, I think it demonstrates a concerning amplification of the First Amendment way outside its traditional contours. Consider other things that are lawful in neighboring states that are not lawful in Idaho. Marijuana use. Basically, it puts states at war with each other to be able to race to the bottom on varying views of morals. Sex reassignment surgeries is another one. Do we really think that it's unlawful for Idaho to say that parents of minors need to be able to know whether their children are being transported to another state to receive puberty blockers, cross-sex hormones, or even a sex reassignment surgery? The logic has no end. The shoe fits the other foot, too. Consider a Washington law. If Washington responded and said, you cannot traffic minors to go to Idaho to receive conversion therapy, under our view, that's perfectly consistent. That law is valid. Under her view, that's unconstitutional under the First Amendment. It has to go both ways, and I don't think there's a limiting logic to their view. It's also inconsistent with the Holder v. Humanitarian case where the federal law criminalized something that was perfectly legal in another country, another jurisdiction, criminalized material support for various organizations that the United States had deemed were terrorist organizations, but the material support for an organization in Iraq or Iran certainly is lawful in terms of Iraq or Iran's law, and so it just doesn't make sense to say that this all turns on whether some part of the act is lawful. I don't think federalism and all the suggestion about the states being, you know, the laboratories quite extends to Iraq. Well, but here's another point, Your Honor, is it puts other constitutional protections at war with each other. So parental rights in Myers, Pierce, Schnettowski. Now you're closer to that. Yeah, and I think that's a real concern because the Supreme Court has made very clear that parents have a custody obligation over their children, and that means making medical decisions, and it puts that at war. And so now parents in Idaho may have a claim, a constitutional claim, against this injunction if they can't even exercise their parental rights because there's apparently a First Amendment right at war with their parental rights. That doesn't make any sense. I think some of these hypotheticals get to the point of as-applied challenges and why they're necessary in these cases. If you start encroaching on the edges, maybe you get to some close cases. And as the Supreme Court said in Hansen, that's the stuff of an as-applied challenge. That's where the protection comes from. But in terms of abstract advocacy of the billboard versus the in-person counseling that looks a lot like recruiting and engages in conduct, now that's speech integral to a crime. If there are any other questions, I'd be happy to answer them. I'm sure we have a lot more questions, but I don't have any today. All right, thank you very much, counsel. Thank you to both lawyers for their fine argument and briefing in this case. This matter is submitted and we are done for the day. Thank you. Thank you. I just also want to echo Judge Owens at the briefing and the argument. They have really been exceptional. Thank you.
judges: McKEOWN, BEA, OWENS